UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CASE NO.:

| | |
|---|---|
| **SWALEH MOHAMED ABDALLA,** | ) |
| as Special Administrator of the Estate of | ) |
| **SIIT ABDALLA MOHAMED,** | ) |
| deceased, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| **THE BOEING CO.** an Illinois corporation, | ) |
| And **ROSEMOUNT AEROSPACE, INC.** | ) |
| A Delaware Corporation, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Comes Now, the Plaintiff, **SWALEH MOHAMED ABDALLA,** as Special Administrator of the Estate of **SIIT ABDALLA MOHAMED**, deceased, by and through his attorneys, RUDER LAW, LLC, And brings forth this complaint against the Defendants, **THE BOEING CO.**, an Illinois corporation, and **ROSEMOUNT AEROSPACE, INC.**, a Delaware corporation, for damages and alleges as follows:

## INTRODUCTION

1.      This is an action for damages pursuant to the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1 *et seq.*, and/or any other applicable law, based on defective design, concomitant inadequate warnings as well as manufacturing defects relating to the Boeing 737 MAX 8 aircraft.

2.      At all times material hereto, a Boeing 737 MAX 8 commercial aircraft, registration ET-AVJ ( "subject aircraft"), operated by Ethiopian Airlines as scheduled passenger flight Ethiopian

1

Airlines flight 302 departed on March 10, 2019 from Addis Ababa Bole International Airport, Ethiopia, with a destination of Jomo Kenyatta International Airport in Nairobi, Kenya ( "subject flight" and/or "Flight ET 302").

3.      At all times material, Flight ET 302 crashed shortly after takeoff on March 10, 2019, killing everyone on board ("subject accident") including Decedent, SIIT ABDALLA MOHAMED (hereinafter, may be referred to in this Complaint as "Decedent".)

4.      The subject aircraft was manufactured by Boeing Corporation (hereinafter "Boeing") sometime in 2018 and delivered to Ethiopian Airlines on or about November of 2018, was equipped with a flight control anti-stall system that automatically and erroneously pushes the nose of the aircraft's downward. Boeing failed to warn of said defect.[1]

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this controversy. Original jurisdiction exists in the District Courts of the United States pursuant to 28 U.S.C. § 1369, commonly known as the Multiparty, Multiforum Jurisdiction Act.

6.       At all times material, Boeing is and was a citizen and resident of the State of Illinois because it maintains its principal place of business in Cook County, Illinois. At all times material, Boeing has been authorized to do business, and has been transacting or conducting business in the State of Illinois. *See* 735 Ill. Comp. Stat. 5/2-209(b)(4).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as Boeing is a resident of said District. Further, a substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

---

[1] The Plaintiff intends to assert claims against the United States Federal Aviation Administration ("FAA") under the Federal Tort Claims Act, 28 U.S.C. § 2674.

## THE PARTIES

8.     The Plaintiff, SWALEH MOHAMED ABDALLA, has been duly appointed as Special Administrator of decedent's estate and is a Kenyan citizen and resident of Kenya.

9.     At all times relevant, the Decedent, SIIT ABDALLA MOHAMED, was a resident and citizen of Kenya.

10.    The Decedent's only surviving heirs are:

        a. Fatma Ali MOHAMED, minor child of decedent;

        b. Motea Saeed Ali Al-Halal, husband of decedent;

        c. Johara Mbarak Awadh, mother of decedent; and

        d. Mohamed Abdalla Mohamed, brother of decedent.

11.    The Defendant, Boeing Company (also referred to as "Boeing"), was and is a corporation that is domiciled in, is a resident of, and has its principal place of business in Cook County, Illinois.

12.    At all times relevant, Boeing was engaged in the business of designing, manufacturing, integrating, assembling, modifying, maintaining, inspecting, testing, servicing, marketing, and distributing aircrafts and their component parts, including the subject aircraft.

13.    At all times relevant, Rosemount Aerospace, Inc., is a Delaware corporation with its principle place of business in the State of Minnesota, and was/is engaged in the business of designing, manufacturing, assembling, distributing, marketing and supplying sensor's to Defendant's, Boeing, aircraft. More specifically, the subject angle of attack sensor that failed at the time of the subject incident, on the subject airplane.

3

## FACTS COMMON TO ALL COUNTS

14.     Defendant, Boeing, has manufactured and sold over three hundred units of the B737 MAX 8 model, which included Defendant's, Rosemount Aerospace, Inc., subject angle of attack sensor which failed at the time of the subject incident, on the subject airplane.

15.     Prior to the date of the subject accident, Defendant, Boeing, with the approval of the Federal Aviation Administration ("FAA"), designed the 737 MAX 8 model aircraft, along with its component parts, including the sensors from Defendant, Rosemount Aerospace, Inc., in the United States and marketed, manufactured, produced, assembled, and sold the subject aircraft in the United States.

16.     With the FAA's permission and consent, Defendant, Boeing, was authorized to approve portions of the amendment certification processes, including the system safety analysis.

17.     Indeed, the FAA delegated to Defendant, Boeing, the "System Safety Analysis" on the Maneuvering Characteristics Augmentation System (MCAS). Simply stated, Defendant, Boeing, was allowed to self-regulate on the safety parameters of the MCAS.

18.     Defendant, Boeing, made representations that the subject aircraft was airworthy, safe, reliable, and fit for its intended purposes.

19.      On or about November of 2018, Defendant, Boeing, delivered the newly manufactured subject aircraft to Ethiopian Airlines, with the knowledge that it would be used for commercial flight operations.

20.     At all times material, the subject aircraft was sold and delivered by Defendant, Boeing, without being altered and/or without substantial changes in the condition in which it was sold and delivered, and it was being used as intended by, or in a manner that was reasonably foreseeable to Defendants, Boeing and Rosemount Aerospace, Inc.

4

21.     At all times material, Ethiopian Airlines used the subject aircraft for its normal and intended use: commercial aviation.

22.     Defendant, Boeing, introduced a new generation, more powerful with heavier engines on the B737 Max 8 model which impacted the airplane's aerodynamic balance.

23.     As a result of the new size and placement of the aircraft's engines on the 737 MAX 8, the aircraft is forced to raise its nose in flight ("pitch").

24.     In an attempt to combat the pitch, the MCAS automatically lowers the nose (without pilot input), using data fed from a sensor under the plane's nose.

25.     Defendant's, Boeing, 737 MAX 8 uses the MCAS, which did not exist in prior Boeing 737 models. The said MCAS was intended to stabilize the aircraft in flight, is activated without input from pilots, and only allows for a temporary override with pilot input, before the system re-engaging automatically again.

26.     On this particular model, if the sensors were provided faulty or contradictory data to the MCAS, the system would force the aircraft into a nose dive.

27.     On the date of the accident, Defendant, Boeing, failed to include a description of the MCAS in the flight crew operations manual, and failed to notify the airline and pilots operating the Ethiopian Airlines Flight ET302 that the MCAS was operating on the aircraft.

28.     Additionally, Defendant', Boeing, failed to warn pilots operating subject aircraft that in certain circumstances the said MCAS system might cause the airplane to nose dive, and further failed to provide the pilots with information on how to combat and correct an instance when the MCAS was forcing the plane into a dive.

5

## DESIGN DEFECT AND INADEQUATE WARNINGS

29.     Defendant's, Boeing, subject aircraft was defective in design, had inadequate warnings,

and was unreasonably dangerous in the following ways, among others:

a. the subject aircraft's automated flight control system, which is new and unique to the 737 MAX series, causes the aircraft to dive down automatically towards the ground in situations where such dives are unwarranted, unreasonably dangerous, and erroneous;

b. the subject aircraft's electrical and computer components erroneously and automatically force the nose of the airplane down, causing it to dive, even when the aircraft is being flown manually by pilots;
c. the subject aircraft's flight control system incorrectly and automatically operates the aircraft in such a way as to cause excessive nose-down inputs and significant altitude loss;

d. the subject aircraft's sensors are defective and generate false readings, including false readings related to the aircraft's angle of attack—the angle between the wing and the oncoming airflow—which triggers the aircraft's automated flight management and control systems to push the aircraft's nose downward;

e. the subject aircraft's lack of redundancies in its sensors renders it unreasonably dangerous because minor inputs and minor errors can force the aircraft into an uncontrollable nosedive;

f. the subject aircraft's defective sensors and flight control system cause the aircraft's control yolk to feel different from the yolks used for training the users of the 737 series, which cause the subject aircraft's pilots to be confused and unable to correct the subject aircraft's automatic dive;

g. Boeing failed to warn the airlines, pilots, users, and intended third-party beneficiaries of the defective automation that causes the subject aircraft to dive, Boeing failed to warn of the defective sensors, and Boeing failed to warn and educate users on possible manual overrides to the subject aircraft's defective system; and

h. Boeing failed to adequately test the subject aircraft, its flight control system, and its sensors, and Boeing failed to substantiate

6

the changes to its previous 737 models with sufficient testing and data.

30.     At all times material, Defendant, Boeing, failed to warn the public, the airlines, the pilots, the users, and the intended third-party beneficiaries of the 737 MAX 8's unreasonably dangerous and defective design, including that the aircraft automatically and uncontrollably dove.

31.     At all times material, the subject aircraft failed to perform in a manner reasonably expected given its nature and intended purpose, as alleged herein.

32.     The subject aircraft was not reasonably safe as designed. At the time of its manufacture, the likelihood that the subject aircraft would cause injury or death to passengers aboard the subject aircraft, including the Decedent, and considering the seriousness of the harm, outweighed the burden on Defendant's, Boeing, of designing the subject aircraft in a way that would have prevented those harms, including the burden of issuing adequate warnings of such defects.

**MARCH 10, 2019: ETHIOPIAN AIRLINES FLIGHT 302**

33.     On March 10, 2019, Ethiopian Airlines was operating the subject aircraft on a scheduled passenger flight from Addis Ababa, Ethiopia, to Nairobi, Kenya. At or around 8:38 a.m. local time (5:38 a.m. UTC), the subject flight departed Bole International Airport in Addis Ababa, wherein Decedent, SIIT ABDALLA MOHAMED, was a lawful passenger on.

34.     Approximately one minute into the flight, the pilot reported a "flight control" problem, asked for clearance to return to Addis Ababa, and said clearance was granted.

35.     Preliminary flight tracking data shows that the subject aircraft was experiencing unstable vertical speed after takeoff, fluctuating altitude and rate of climb and descent, and unsafe acceleration, none of which is normal during takeoff.

7

36.    Subsequently, flight control lost contact with the subject aircraft around 8:44 a.m. local time, at which point the subject aircraft crashed near the town of Bishoftu, near Addis Ababa.

37.    Upon information and belief, the subject aircraft crashed because, outside the plane, one of the subject aircraft's Defendant's, Rosemount Aerospace, Inc., angle of attack sensors falsely indicated that the plane's nose was pointed too high, and that the aircraft could stall.

38.    Upon information and belief, Defendant's, Rosemount Aerospace, Inc., false angle of attack reading on Defendant's, Boeing, subject aircraft, triggered the automatic MCAS, which pushed up the forward edge of the stabilizers on the plane's tail and forced the plane's nose down. The pilots responded by moving the stabilizers in the opposite direction, trying to lift the plane's nose back up, but the pilots lost the fight to the 737 MAX's automated system.

39.    At the time of the crash, Decedent, SIIT ABDALLA MOHAMED, was lawfully on board the subject flight and as a direct and proximate result of the defects alleged herein, the subject aircraft crashed and killed the Decedent.

40.    Defendant's, Boeing, original documents provided to the FAA included a description specifying a limit to how much the system could move the horizontal tail—a limit of 0.6 degrees, out of a physical maximum of just less than 5 degrees of nose-down movement. The limit was later increased after flight tests showed that a more powerful movement of the tail was required to avert a high-speed stall, when the plane is in danger of losing lift and spiraling down. After the subject accident, Defendant, Boeing, for the first time provided to airlines details about the MCAS. Defendant's, Boeing, bulletin to the airlines stated that the limit of MCAS's command was 2.5 degrees. The number was apparently new to FAA engineers who had seen 0.6 degrees in their safety assessment. The higher limit meant that each time MCAS was triggered, it caused a much greater movement of the tail than was specified in the original safety analysis document.

8

41.     The subject accident also demonstrated that the MCAS can be triggered multiple times, and because the MCAS reset each time it was used, it effectively had unlimited authority to give the airplane's nose the maximum possible push downward.

42.     At a limit of 2.5 degrees, two cycles of MCAS without correction would have been enough to reach the maximum nose-down effect.

43.     Subsequent to the crash of Ethiopian Flight 302, all countries, including the United States have now grounded Defendant's, Boeing. 737 MAX 8 aircraft from continued flights. No known recall has been issued by Defendants, Boeing and/or Rosemount Aerospace, Inc., on the subject model of its aircraft.

**COUNT I - BOEING**
**PRODUCTS LIABILITY**

The Plaintiff re-adopts and re-alleges paragraphs 1 through 43 above.

44.     At all relevant times, the subject aircraft was sold and delivered by Defendant, Boeing, without being altered by some other party and without substantial change in the condition in which it was sold and delivered, and it was being used as intended by, or in a manner that was reasonably foreseeable to Defendant, Boeing.

45.     At the time the subject aircraft left the custody and control of Defendant, Boeing, at which point it entered the stream of commerce, and by and through the actions or omissions of Defendant, Boeing, the subject aircraft was defective in design, had inadequate warnings, and was unreasonably dangerous in the following ways, among others:

> a. the subject aircraft's automated flight control system, which is new and unique to the 737 MAX series, causes the aircraft to dive down automatically towards the ground in situations where such dives are unwarranted, unreasonably dangerous, and erroneous;

9

b. the subject aircraft's electrical and computer components erroneously and automatically force the nose of the airplane down, causing it to dive, even when the aircraft is being flown manually by pilots;

c. the subject aircraft's flight control system incorrectly and automatically operates the aircraft in such a way as to cause excessive nose-down inputs and significant altitude loss;

d. the subject aircraft's sensors are defective and generate false readings, including false readings related to the aircraft's angle of attack—the angle between the wing and the oncoming airflow—which triggers the aircraft's automated flight management and control systems to push the aircraft's nose downward;

e. the subject aircraft's lack of redundancies in its sensors renders it unreasonably dangerous because minor inputs and minor errors can force the aircraft into an uncontrollable nosedive;

f. the subject aircraft's defective sensors and flight control system cause the aircraft's control yolk to feel different from the yolks used for training the users of the 737 series, which cause the subject aircraft's pilots to be confused and unable to correct the subject aircraft's automatic dive;

g. Boeing failed to warn the airlines, pilots, users, and intended third-party beneficiaries of the defective automation that causes the subject aircraft to dive, Boeing failed to warn of the defective sensors, and Boeing failed to warn and educate users on possible manual overrides to the subject aircraft's defective system; and

h. Boeing failed to adequately test the subject aircraft, its flight control system, and its sensors, and Boeing failed to substantiate the changes to its previous 737 models with sufficient testing and data.

46.    At all relevant times, Boeing failed to warn the public, the airlines, the pilots, the users, and the intended third-party beneficiaries of the 737 MAX 8's unreasonably dangerous and defective design, including that the aircraft automatically and uncontrollably dived partly because of erroneous sensors.

10

47.     At all relevant times, the subject aircraft failed to perform in a manner reasonably expected given its nature and intended purpose, as alleged herein.

48.     The subject aircraft was not reasonably safe in its designed. At the time of its manufacture, the likelihood that the subject aircraft would cause injury or death to passengers aboard the subject aircraft, including the Decedent, and considering the seriousness of the harm, outweighed the burden on Defendant, Boeing, of designing the subject aircraft in a way that would have prevented those harms, including the burden of issuing adequate warnings of such defects.

49.     The defects in the design and warning of the subject aircraft caused the subject accident, which directly, proximately, and foreseeably caused the deaths of everyone aboard the subject aircraft, including the Decedent.

50.      The Plaintiff has been injured and thus makes claim to all damages available, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including:

        a.)     Pain and suffering;

        b.)     Economic losses,

        c.)     Loss of support to heirs and beneficiaries,

        d.)     Net loss of estate, pecuniary losses,

        e.)     Loss of companionship, loss of guidance, loss of consortium, loss of advice, loss of society,

        f.)     Damages associated with grief, sorrow, and mental suffering and anguish, as well as pain and suffering and emotional distress, and/or

        g.)     Damages associated with pre-death pain and suffering of the Decedent.

WHEREFORE, Plaintiff, as Special Administrator of the Estate of the Decedent, and on behalf of the Decedent's survivors, beneficiaries, and heirs, pray for judgment in their favor against Defendant, Boeing, for damages, costs, fees, and all other awards deemed just. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

**COUNT II - BOEING**
**NEGLIGENCE - PRODUCTS LIABILITY**

The Plaintiff re-adopts and re-allege paragraphs 1 through 43 above.

51.     At all relevant times, Defendant, Boeing, owed a duty to use reasonable care, and to exercise the highest degree of care, in planning, designing, certifying, manufacturing, assembling, installing, overhauling, modifying, repairing, testing, inspecting, marketing, and distributing its aircraft, including the subject aircraft, and its component parts, so as to not cause injury to, or the death of, the subject aircraft's passengers, including the Decedent, who would put the subject aircraft to its normal and intended use.

52.     Boeing negligently breached the duty of care it owed to the Plaintiff and the Decedent by negligently and carelessly designing the subject aircraft with unreasonably dangerous defects, by designing an unreasonably dangerous product that failed to perform in a manner reasonably to be expected in light of its nature and intended function, and by placing the subject aircraft into the stream of commerce with unreasonably dangerous design defects.

53.      At all relevant times, the subject aircraft was sold and delivered by Defendant, Boeing, without being altered by some other party and without substantial change in the condition in which it was sold and delivered, and it was being used as intended by, or in a manner that was reasonably foreseeable to, Defendant, Boeing.

54.     At the time the subject aircraft left the custody and control of Defendant, Boeing, at which point it entered the stream of commerce, and by and through the negligent actions or omissions of Defendant, Boeing, the subject aircraft was defective in design, had inadequate warnings, and was unreasonably dangerous in the following ways, among others:

>   a. the subject aircraft's automated flight control system, which is new and unique to the 737 MAX series, causes the aircraft to dive down automatically towards the ground in situations where such dives are unwarranted, unreasonably dangerous, and erroneous;
>
>   b. the subject aircraft's electrical and computer components erroneously and automatically force the nose of the airplane down, causing it to dive, even when the aircraft is being flown manually by pilots;
>
>   c. the subject aircraft's flight control system incorrectly and automatically operates the aircraft in such a way as to cause excessive nose-down inputs and significant altitude loss;
>
>   d. the subject aircraft's sensors are defective and generate false readings, including false readings related to the aircraft's angle of attack—the angle between the wing and the oncoming airflow—which triggers the aircraft's automated flight management and control systems to push the aircraft's nose downward;
>
>   e. the subject aircraft's lack of redundancies in its sensors renders it unreasonably dangerous because minor inputs and minor errors can force the aircraft into an uncontrollable nosedive;
>
>   f. the subject aircraft's defective sensors and flight control system cause the aircraft's control yolk to feel different from the yolks used for training the users of the 737 series, which cause the subject aircraft's pilots to be confused and unable to correct the subject aircraft's automatic dive;
>
>   g. Boeing failed to warn the airlines, pilots, users, and intended third-party beneficiaries of the defective automation that causes the subject aircraft to dive, Boeing failed to warn of the defective sensors, and Boeing failed to warn and educate users on possible manual overrides to the subject aircraft's defective system; and

h. Boeing failed to adequately test the subject aircraft, its flight control system, and its sensors, and Boeing failed to substantiate the changes to its previous 737 models with sufficient testing and data.

55.     At all relevant times, Boeing negligently failed to warn the public, the airlines, the pilots, the users, and the intended third-party beneficiaries of the 737 MAX 8's unreasonably dangerous and defective design, including that the aircraft automatically and uncontrollably dived partly because of erroneous sensors.

56.     At all relevant times, the subject aircraft failed to perform in a manner reasonably expected given its nature and intended purpose, as alleged herein.

57.     The subject aircraft was not reasonably safe as designed. At the time of its manufacture, the likelihood that the subject aircraft would cause injury or death to passengers aboard the subject aircraft, including the Decedent, and considering the seriousness of the harm, outweighed the burden on Boeing of designing the subject aircraft in a way that would have prevented those harms, including the burden of issuing adequate warnings of such defects.

58.     The defects in the design and warning of the subject aircraft caused the subject accident, which directly, proximately, and foreseeably caused the deaths of everyone aboard the subject aircraft, including the Decedent.

59.     The Plaintiff has been injured and thus claim all damages available, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including:

        a.)     Pain and suffering;

        b.)     Economic losses,

        c.)     Loss of support to heirs and beneficiaries,

        d.)     Net loss of estate, pecuniary losses,

e.)     loss of companionship, loss of guidance, loss of consortium, loss of advice, loss of society,

f.)     Damages associated with grief, sorrow, and mental suffering and anguish, as well as pain and suffering and emotional distress, and/or

g.)     Damages associated with pre-death pain and suffering of the Decedent.

WHEREFORE, the Plaintiff, as Special Administrator of the Estate of the Decedent, and on behalf of the Decedent's survivors, beneficiaries, and heirs, pray for judgment in their favor against Defendant, Boeing, for damages, costs, fees, and all other awards deemed just. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## COUNT III - BOEING
## NEGLIGENCE - FAILURE TO WARN

The Plaintiff re-adopts and re-alleges paragraphs 1 through 43 above.

60.     At all relevant times, Defendant, Boeing, owed a duty to use reasonable care, and to exercise the highest degree of care, in planning, designing, certifying, manufacturing, assembling, installing, overhauling, modifying, repairing, testing, inspecting, marketing, and distributing its aircraft, including the subject aircraft, and its component parts, so as to not cause injury to, or the death of, the subject aircraft's passengers, including the Decedent, who would put the subject aircraft to its normal and intended use.

61.     Boeing negligently breached the duty of care it owed to the Plaintiff and the Decedent by negligently and carelessly designing the subject aircraft with unreasonably dangerous defects, by designing an unreasonably dangerous product that failed to perform in a manner reasonably to be expected in light of its nature and intended function, and by placing the subject aircraft into the stream of commerce with unreasonably dangerous design defects.

15

62.     At all relevant times, the subject aircraft was sold and delivered by Defendant, Boeing, without being altered by some other party and without substantial change in the condition in which it was sold and delivered, and it was being used as intended by, or in a manner that was reasonably foreseeable to, Defendant, Boeing.

63.     At the time the subject aircraft left the custody and control of Defendant, Boeing, at which point it entered the stream of commerce, and by and through the negligent actions or omissions of Defendant, Boeing, the subject aircraft was defective in design, had inadequate warnings, and was unreasonably dangerous in the following ways, among others:

> a. the subject aircraft's automated flight control system, which is new and unique to the 737 MAX series, causes the aircraft to dive down automatically towards the ground in situations where such dives are unwarranted, unreasonably dangerous, and erroneous;
>
> b. the subject aircraft's electrical and computer components erroneously and automatically force the nose of the airplane down, causing it to dive, even when the aircraft is being flown manually by pilots;
>
> c. the subject aircraft's flight control system incorrectly and automatically operates the aircraft in such a way as to cause excessive nose-down inputs and significant altitude loss;
>
> d. the subject aircraft's sensors are defective and generate false readings, including false readings related to the aircraft's angle of attack—the angle between the wing and the oncoming airflow—which triggers the aircraft's automated flight management and control systems to push the aircraft's nose downward;
>
> e. the subject aircraft's lack of redundancies in its sensors renders it unreasonably dangerous because minor inputs and minor errors can force the aircraft into an uncontrollable nosedive;
>
> f. the subject aircraft's defective sensors and flight control system cause the aircraft's control yolk to feel different from the yolks used for training the users of the 737 series, which cause the subject aircraft's pilots to be confused and unable to correct the subject aircraft's automatic dive;

16

g. Boeing failed to warn the airlines, pilots, users, and intended third-party beneficiaries of the defective automation that causes the subject aircraft to dive, Boeing failed to warn of the defective sensors, and Boeing failed to warn and educate users on possible manual overrides to the subject aircraft's defective system; and

h. Boeing failed to adequately test the subject aircraft, its flight control system, and its sensors, and Boeing failed to substantiate the changes to its previous 737 models with sufficient testing and data.

64.     At all relevant times, Defendant, Boeing, negligently failed to warn the public, the airlines, the pilots, the users, and the intended third-party beneficiaries of the 737 MAX 8's unreasonably dangerous and defective design, including that the aircraft automatically and uncontrollably dived partly because of erroneous sensors.

65.     At all relevant times, the subject aircraft failed to perform in a manner reasonably expected given its nature and intended purpose, as alleged herein.

66.     The subject aircraft was not reasonably safe as designed. At the time of its manufacture, the likelihood that the subject aircraft would cause injury or death to passengers aboard the subject aircraft, including the Decedent, and considering the seriousness of the harm, outweighed the burden on Boeing of designing the subject aircraft in a way that would have prevented those harms, including the burden of issuing adequate warnings of such defects.

67.     The defects in the design and warning of the subject aircraft caused the subject accident, which directly, proximately, and foreseeably caused the deaths of everyone aboard the subject aircraft, including the Decedent.

68.     The Plaintiff has been injured and thus claim all damages available, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including:

a.)     Pain and suffering;

b.)     Economic losses,

c.)     Loss of support to heirs and beneficiaries,

d.)     Net loss of estate, pecuniary losses,

e.)     loss of companionship, loss of guidance, loss of consortium, loss of advice, loss of society,

f.)     Damages associated with grief, sorrow, and mental suffering and anguish, as well as pain and suffering and emotional distress, and/or

g.)     Damages associated with pre-death pain and suffering of the Decedent.

WHEREFORE, the Plaintiff, as Personal Representative or Administrator of the Estate of the Decedent, and on behalf of the Decedent's survivors, beneficiaries, and heirs, pray for judgment in their favor against Defendant, Boeing, for damages, costs, fees, and all other awards deemed just. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## COUNT IV - BOEING
## CIVIL CONSPIRACY

The Plaintiff re-adopts and re-alleges paragraphs 1 through 43 above.

69.     Defendant, Boeing, conspired with and assented to a scheme, device, plan, and agreement with other entities and individuals, including the FAA and/or personnel delegated authority by the FAA, to certify the Boeing 737 MAX series, including the aircraft which is subject to this complaint, in violation of the laws and regulations of the United States for the purpose of speeding up the approval process of the Boeing 737 MAX series, which in turn gave Defendant, Boeing, a financial and competitive advantage in the aviation industry.

70.     Defendant, Boeing, and these other entities and individuals engaged in concerted actions to conceal, deny, and downplay the hazards and safety concerns, in violation of federal

18

regulations, presented by the Boeing 737 MAX 8's new features, including its MCAS, heavier and repositioned engines, and unstable aerodynamics.

71.     Defendant, Boeing, took overt tortious and/or unlawful actions in furtherance of the conspiracy, including by failing to correctly classify the safety concerns presented by the MCAS; by failing to adhere to industry standards and regulations in designing and testing the 737 MAX; by failing to recuse itself from the certification process when it knew or should have known that it was acting under tremendous financial pressure to certify the 737 MAX promptly; and by applying pressure, whether directly or indirectly, to the Boeing personnel that had been delegated regulatory authority to certify the 737 MAX without appropriate testing and data, and in a rushed manner.

72.     As a direct and proximate result of this conspiracy, Plaintiff has been harmed, and hereby claim all damages available under applicable law.

WHEREFORE, Plaintiff, as Special Administrator of the Estate of the Decedent, and on behalf of the Decedent's survivors, beneficiaries, and heirs, pray for judgment in their favor against Defendant, Boeing, for damages, costs, fees, and all other awards deemed just. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## COUNT V – ROSEMOUNT AEROSPACE, INC.
## NEGLIGENCE

The Plaintiff re-adopts and re-alleges paragraphs 1 through 43 above.

73.     At all times material, Defendant, Rosemount, owed a duty to the passengers of Boeing's 737 MAX 8 model aircraft, more specifically, Decedent, of SIIT ABDALLA MOHAMED, to exercise reasonable care to properly develop, design, engineer, test, manufacture, produce, process, supply deliver, monitor, market, label, adequately warn, recommend, advertise and/or

sell angle of attack sensors, and/or refrain from introducing area of attack sensors into the stream of commerce and for the use of the subject aircraft.

74.     The defective condition in the angle of attack sensor and the subject crash of Flight 302 was legally caused by the negligence, gross negligence, wrongdoing, tortious conduct, careless acts and omissions of Defendant, Rosemount, in the development, design, engineering, testing, manufacturing, production, processing, supplying, delivery, monitoring, marketing, labeling, and selling and Defendant's, Rosemount, failure to warn and failure to take remedial appropriate actions with respect to any and all known dangerously defective conditions.

75.     As a direct and legal cause of Defendant's, Rosemount, negligence, carelessness, gross negligence, and/or otherwise wrongful acts and/or omissions, Decedent, of SIIT ABDALLA MOHAMED, died in the subject crash.

76.     The Plaintiff has been injured and thus claim all damages available, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including:

> a.)     Pain and suffering;
>
> b.)     Economic losses,
>
> c.)     Loss of support to heirs and beneficiaries,
>
> d.)     Net loss of estate, pecuniary losses,
>
> e.)     loss of companionship, loss of guidance, loss of consortium, loss of advice, loss of society,
>
> f.)     Damages associated with grief, sorrow, and mental suffering and anguish, as well as pain and suffering and emotional distress, and/or
>
> g.)     Damages associated with pre-death pain and suffering of the Decedent.

WHEREFORE, Plaintiff, as Special Administrator of the Estate of the Decedent, and on behalf of the Decedent's survivors, beneficiaries, and heirs, pray for judgment in their favor

against Defendant, Rosemount Aerospace, Inc., for damages, costs, fees, and all other awards deemed just. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

**COUNT VI – ROSEMOUNT AEROSPACE, INC.**
**<u>STRICT LIABILITY</u>**

The Plaintiff re-adopts and re-alleges paragraphs 1 through 43 above.

77.     At all times material, Defendant, Rosemount, was the designer, manufacturer, engineer, distributor and/or seller of aerospace products, including Angle of Attack sensors, who hold and have held themselves out to the public as having superior knowledge, skill and expertise in the design, testing, engineering, manufacture, and distribution of aerospace sensors for commercial aircraft and, in the course of its business, Defendant ROSEMOUNT designed, tested, manufactured, engineered and caused to be placed into the stream of commerce, a product known as an Angle of Attack sensor for utilization in the BOEING737 MAX 8 aircraft.

78.     Defendant, Rosemount, expressly or impliedly warranted that the Angle of Attack sensor was fit for its intended use in commercial aircraft, being free of defects in their design and/or maintenance and, further, Defendant, Rosemount, marketed, sold, distributed, and caused to be introduced into the stream of commerce by sale to Defendant Boeing.

79.     The Angle of Attack sensor was in substantially similar condition to its original condition at delivery to Boeing.

80.     Defects in the Angle of Attack sensor were a legal cause of the subject air crash, and the defects made the subject aircraft unreasonably dangerous for travel.

81.     As a direct and legal cause of Defendant's, Rosemount, negligence, carelessness, gross negligence, and/or otherwise wrongful acts and/or omissions, Decedent, of SIIT ABDALLA MOHAMED, died in the subject crash.

82.     The Plaintiff has been injured and thus claim all damages available, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including:

        a.)     Pain and suffering;

        b.)     Economic losses,

        c.)     Loss of support to heirs and beneficiaries,

        d.)     Net loss of estate, pecuniary losses,

        e.)     loss of companionship, loss of guidance, loss of consortium, loss of advice, loss of society,

        f.)     Damages associated with grief, sorrow, and mental suffering and anguish, as well as pain and suffering and emotional distress, and/or

        g.)     Damages associated with pre-death pain and suffering of the Decedent.

WHEREFORE, Plaintiff, as Personal Representative or Administrator of the Estate of the Decedent, and on behalf of the Decedent's survivors, beneficiaries, and heirs, pray for judgment in their favor against Rosemount Aerospace, Inc. for damages, costs, fees, and all other awards deemed just. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## <ins>DEMAND FOR JURY TRIAL</ins>

Plaintiff hereby demands a jury trial on all issues so triable.

Dated this 20th day of June, 2019.

Respectfully submitted,

By: */s/Lawrence T. Ruder*_____
LAWRENCE T. RUDER
Illinois ARDC #3126379


Lawrence T. Ruder, Esq. (*Local Counsel*)
RUDER LAW, LLC
Ill. ARDC #: 3126379
20 North Clark Street, Suite 3100
Chicago, IL 60602
(312) 481-7007
E-mail: lruder@ruderlaw.net

Laban Opande, Esq. (admitted Pro Hac Vice)
Texas Bar No.: 24053786
**The Opande Law Firm**
9494 SW Freeway, Suite 300
Houston, TX 77074
Phone: (713) 721-1300
E-mail: laban@opandelaw.com

Carlos A. Velasquez, Esq. (admitted Pro Hac Vice)
Florida Bar No.: 755982
Alejandro Larrazabal, Esq. (admitted Pro Hac Vice)
Florida Bar No.: 102708
**Velasquez Dolan Arias, P.A.**
101 North Pine Island Road – Suite 201
Plantation, Florida, 33324
Phone: (954) 382-0533 – Fax: (954) 382-0585
CVelasquez@VDATrialLawyers.com
ALarrazabal@VDATrialLawyers.com